UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| SPRING TREE LENDING, LLC, | ) | CASE NO. 18-55171-SMS |
| | ) | |
| Debtor. | ) | JUDGE SIGLER |
| | ) | |
| _____ | ) | |
| | ) | |
| AMERICAN CREDIT ACCEPTANCE, LLC, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | CONTESTED MATTER |
| | ) | |
| SPRING TREE LENDING, LLC, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**EMERGENCY MOTION (I) FOR RELIEF FROM THE AUTOMATIC STAY TO TERMINATE DEBTOR'S AND ITS AFFILIATES' SERVICING AND COLLECTION ACTIVITIES UNDER THE FUNDING AGREEMENT AND EXERCISE AVAILABLE RIGHTS AND REMEDIES; AND (II) TO PROHIBIT USE OF CASH COLLATERAL AND FOR AN ACCOUNTING**

**COMES NOW** American Credit Acceptance, LLC ("**ACA**"), by and through undersigned counsel, and hereby files this emergency motion (the "**Motion**") for an order granting relief from the automatic stay to exercise ACA's available rights and remedies, including without limitation, the termination of Debtor's and its affiliates' servicing rights under the Funding Agreement and ACA's assumption of the servicing rights and collection of Debtor's outstanding receivables, and the non-judicial foreclosure of the collateral securing ACA's claims against Debtor, to prohibit Debtor's use of cash collateral and for an accounting, and such other relief as described in more detail in the Motion. In support of this Motion, ACA respectfully states as follows:

31438756 v1

## SUMMARY OF REQUESTED RELIEF

Debtor and its affiliates operate an indirect finance company. See Affidavit of Steven Meyer, ¶ 4.[1] Debtor purchases Retail Installment Sales contracts ("**RISC's**") from one or more "Buy Here, Pay Here" used car dealers, who generate these RISC's as they sell used cars to third-party consumers. Id. at ¶ 5. These used car dealers provide the seller-financing for the consumers' acquisition of these cars and serve as the remittance office for the consumers' installment payments. Id. In order to provide liquidity for its business operations, Debtor and its affiliates financed their automobile loan portfolio with ACA with a secured revolving loan facility. Id. at ¶ 6.

Debtor and its affiliates have defaulted under their secured loan obligations with ACA and ceased their business operations. Meyer Aff., ¶ 15. Additionally, Debtor and its affiliates have refused to surrender their loan servicing duties and continue to collect and retain ACA's collateral -- the consumer's installment payments. Id.

ACA is under the immediate threat of irreparable harm based upon Debtor and its affiliates continued collection and use of ACA's cash collateral at a time when it is no longer purchasing RISC's and the related receivables. Meyer Aff., ¶ 17. ACA requests immediate relief from the automatic stay to exercise its rights and remedies to preserve its collateral against any further diminution in value.

## JURISDICTION

1. On March 28, 2017 (the "**Petition Date**"), Pacific Island Equity Corporation filed

---

[1] A true and correct copy of the Affidavit of Steven Meyer (the "**Meyer Affidavit**") is attached hereto as Exhibit A and incorporated herein by reference. The affidavit will be referred to herein as the "Meyer Aff., ¶ ___."

2

31438756 v1

an involuntary petition (the "**Involuntary Petition**") for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**") against Spring Tree Lending, LLC (the "**Debtor**").

2. As of the date of filing this Motion, Debtor has not responded to the Involuntary Petition.

3. ACA files this Motion pursuant to Sections 362 and 363 of the Bankruptcy Code.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a).

5. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

A. <u>The Secured Indebtedness Owed By Debtor</u>

6. Debtor is indebted to ACA under one or more loans (the "**Loans**") that were extended pursuant to a Credit Agreement dated as of September 14, 2016 by and among Debtor, as borrower, Spring Tree Financial, LLC ("**Spring Tree Financial**"), as guarantor and servicer, DPG Investments, L.L.C. ("**DPG Investments**"), Spring Tree Holdings, LLC ("**Spring Tree Holdings**"), DPG Golden Eagle, LLC ("**DPG Golden Eagle**"), and Daniel Paul Galvanoni ("**Galvanoni**" and together with Spring Tree Financial, DPG Investments, Spring Tree Holdings, DPG Golden Eagle, and Galvanoni, the "**Guarantors**"), as guarantors, and ACA, as lender, custodian, and backup servicer (as amended from time to time, the "**Funding Agreement**").[2] Meyer Aff., ¶ 7.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Funding Agreement.

3

7. Debtor's obligation to repay the Loans is further evidenced by that certain Note dated September 14, 2016 made payable by Debtor to the order of ACA in the maximum principal amount of $1,000,000 (the "**Note**"). Meyer Aff., ¶ 8.

8. Under the Funding Agreement, Debtor and the Guarantors granted ACA a security interest and lien in all of their assets as collateral security for the prompt and complete payment and performance when due of the Obligations. See Funding Agreement, Art. III. Meyer Aff., ¶ 9.

9. Specifically, Debtor granted ACA a security interest and lien in and to all of Debtor's right, title, and interest in and to its Receivables, the Collection Account, and all proceeds of the foregoing. Id. at § 3.01. Meyer Aff., ¶ 10.

10. ACA properly perfected its security interest and lien in and to Debtor's assets by filing with the Barrow County Clerk of Court, on September 19, 2016, that certain UCC Financing Statement No. 007-2016-035849, naming Debtor and Guarantors, as debtors and ACA, as secured party, and describing the collateral as all assets (the "**Financing Statement**").[3] Meyer Aff., ¶ 11.

11. By virtue of the Funding Agreement and the Financing Statement, ACA holds a first priority security interest and lien against all assets of Debtor.

12. Due to Debtor's defaulting under the Funding Agreement and other Transaction Documents, ACA sent to Debtor and Guarantors a written Notice of Default and Non-Renewal

---

[3] ACA also filed a UCC Financing Statement with the Arizona Secretary of State to perfect its security interest and lien against the assets of non-debtors, DPG Investments and DPG Golden Eagle.

31438756 v1

of Funding Agreement dated March 8, 2018 (the "**Notice of Default**"), which among other things, declared several Termination Events as of February 27, 2018 (the "**Termination Date**"). Meyer Aff., ¶ 12.

13.  By virtue of the declaration of the occurrence of the Termination Date, all Loans and other Obligations were accelerated and became immediately due and payable. See Funding Agreement, § 9.01(b). Meyer Aff., ¶ 13.

14.  Furthermore, by virtue of the declaration of the occurrence of the Termination Date, the Revolving Period has terminated and ACA will not make any further Loans to Debtor. See Funding Agreement, § 9.01(c). Meyer Aff., ¶ 14.

15.  ACA is free to exercise any of its available rights and remedies under the Transaction Documents or at law or in equity, including all remedies under the UCC and Applicable Law. Id. at § 9.02.

16.  Specifically, upon the occurrence of a Termination Event, ACA may terminate all of the rights and obligations of the Servicer (i.e., non-debtor Spring Tree Financial) under the Funding Agreement and appoint a Successor Servicer to assume and be vested with all obligations, authority, and power of the Servicer under the Funding Agreement. Id. at § 8.12(a). The Successor Servicer may be the Backup Servicer (i.e., ACA). Id.

17.  As of the Petition Date, the outstanding principal balance of the Loans was $668,477.02, exclusive of the interest, fees, costs, and other charges permitted by the Transaction Documents. Meyer Aff., ¶ 25. Based on ACA's portfolio analysis, Debtor and its affiliates have no equity in the Property. Id.

31438756 v1

18. ACA has not consented to Debtor's use of cash collateral generated by or arising from the Collateral, including without limitation, the Receivables and the Collections Account. Meyer Aff., ¶ 24.

19. True and correct copies of the following instruments, correspondence, and documents pertaining to the Loans are attached to the Meyer Affidavit as indicated below and incorporated herein by reference:

    a. <u>Exhibit 1</u>:    Funding Agreement;

    b. <u>Exhibit 2</u>:    Note

    c. <u>Exhibit 3</u>:    Financing Statement; and

    d. <u>Exhibit 4</u>:    Notice of Default.

Meyer Aff., ¶ 7-8; 11-12.

## **RELIEF REQUESTED AND BASIS THEREFORE**

20. By this Motion, ACA is seeking relief from the automatic stay in order to exercise its available rights and remedies, which include the termination of Debtor's and its affiliates' servicing rights under the Funding Agreement and ACA's assumption of the servicing rights and collection of Debtor's outstanding receivables, and the non-judicial foreclosure of the other collateral securing ACA's claims against Debtor, to prohibit Debtor's use of cash collateral and for an accounting, and such other relief as described in more detail in the Motion. ACA is entitled to relief from the automatic stay for the reasons set forth below.

31438756 v1

    **A.    ACA Is Entitled To Relief From The Automatic Stay To Terminate Debtors' And Its Affiliates' Servicing Rights Under The Funding Agreement And Undertake Direct Collection Of Payments Relating To The Receivables Due To The Lack Of Adequate Protection Of ACA's Interest In The Receivables.**

21.    Debtor has failed to provide adequate protection of ACA's interest in the Receivables, which constitutes cause for relief from the automatic stay.

22.    Section 362(d)(1) of the Bankruptcy Code provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -- (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1) (2018).

23.    Since the Petition Date, Debtor and its affiliates have continued to collect the Receivables and have failed to turn them over to ACA. Meyer Aff., ¶ 18.

24.    Moreover, upon information and belief, Debtor and its affiliates have ceased doing business and are no longer purchasing RISC's and related Receivables. Meyer Aff., ¶ 16. Consequently, with each passing day that Debtors and its affiliates collect the Receivables and fail to remit such collections to ACA for application against the outstanding balance of the Loans, ACA's collateral position continues to diminish. Id. at ¶ 18; 20-21.

25.    ACA has no knowledge as to what actions, if any, Debtor and its affiliates are taking to ensure that the Receivables are being timely collected from the account debtors. If no action is being taken to insure the account debtors are timely remitting their payments, there is a strong possibility that the future ability to collect the Receivables will be permanently

31438756 v1

undermined due to their perishable nature. Meyer Aff., ¶ 22. ACA is in the best position to ensure that the Receivables are collected in an expedited manner and that any further decline in the value of the Receivables is minimized.

26. By virtue of the prior Termination Events, ACA has the contractual right to terminate and replace non-Debtor Spring Tree Financial as the servicer for the Loans and to collect the Receivables. See Funding Agreement, §§ 8.01; 8.12.

27. Under these circumstances, where Debtor continues to use ACA's cash collateral without consent or Court approval and ACA's interest in the Receivables is not otherwise adequately protected, ACA requests that the Court terminate the automatic stay immediately upon the entry of an order granting this Motion as permitted by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.

**B.     ACA Is Entitled To Relief From The Automatic Stay To Terminate Debtors' And Its Affiliates' Servicing Rights Under The Funding Agreement And Undertake Direct Collection Of Payments Relating To The Receivables Due To Debtor's Lack Of Equity In The Receivables And Debtor's Cessation Of Business Operations.**

28. Debtor does not have any equity in the Receivables and has no present intention of reorganizing its business affairs, which constitutes cause for relief from the automatic stay. Meyer Aff., ¶ 19; 25.

29. Section 362(d)(2) of the Bankruptcy Code provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -- (2) with respect to a stay of an act against property under subsection (a) of this section, if – (A) the debtor does not have an [sic] equity in such property; and (B) such property is not necessary to an effective reorganization.

31438756 v1

11 U.S.C. § 362(d) (2018).

30. First, Debtor has no equity in the Receivables. Meyer Aff., ¶ 25. Debtor has continued to collect and dissipate the Receivables without paying down the outstanding balance of the Loans. Id. at ¶ 18.

31. Additionally, Debtor and its affiliates have ceased doing business and are no longer purchasing RISC's and related Receivables, which accelerates the adverse impact of not applying the collected Receivables against the outstanding balance of the Loans. Meyer Aff., ¶ 16; 20.

32. Second, the Receivables are not necessary to an effective reorganization. Debtor and its affiliates have ceased doing business and are no longer purchasing RISC's and related Receivables. Meyer Aff., ¶ 16. There is no present intention to reorganize its business affairs. Id. at ¶ 19.

33. Under these circumstances, where Debtor has failed to remit any collections arising from or relating to the Receivables and has no equity in the Receivables and no present intention of reorganizing its business affairs, ACA requests that the Court terminate the automatic stay immediately upon the entry of an order granting this Motion as permitted by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.

### C. ACA Is Entitled To Relief From The Automatic Stay To Conduct The Non-Judicial Foreclosure Of the Other Collateral Securing the Loans To Facilitate And Aid The Collection Of The Receivables.

34. Based upon the same reasons set forth in the preceding sections related to the Receivables, ACA is entitled to relief from the automatic stay to conduct the non-judicial foreclosure of the other collateral securing ACA's claims against Debtor, namely the Contracts

31438756 v1

(i.e., RISC's), Collections, Related Security, Records, Receivable Files, and Servicer Files that comprise each Receivable, in order to facilitate and aid the collection of the Receivables.

35.  ACA requires stay relief in order to foreclose and become the holder of the underlying RISC's, instruments, documents, and agreements that comprise the Receivables to maximize the recovery of any past due Receivables. Meyer Aff., ¶ 23. Being the holder of these underlying RISC's, instruments, documents, and agreements assists the pursuit of delinquent account debtors and the enforcement of the underlying contractual rights and remedies. Id.

36.  Based on the foregoing and for the same reasons supporting stay relief against the Receivables, ACA requests that the Court terminate the automatic stay with respect to the other collateral -- namely, the Contracts (i.e., the RISC's), Collections, Related Security, Records, Receivable Files, and Servicer Files that comprise each Receivable -- immediately upon the entry of an order granting this Motion as permitted by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.

### C.  Debtor Should Be Prohibited From Using Such Cash Collateral During the Involuntary Gap Period To Maintain The Status Quo And Directed To Provide An Accounting Of Post-Petition Collections.

37.  Although a debtor is typically permitted to continue using "cash collateral" during the gap period between the filing date of an involuntary petition for relief and the court's entry of an order for relief in the case, the court maintains the ability to order otherwise pursuant to Section 303(f) of the Bankruptcy Code.

38.  ACA has not, and does not, consent to the use of its cash collateral. Meyer Aff., ¶ 24. To maintain the status quo in this case until such time as an order for relief is entered in the case or the Involuntary Petition is dismissed, ACA requests the Court enter an order prohibiting

10

31438756 v1

Debtor from using any cash collateral pending further order of the Court and to segregate and account for any cash collateral in its possession as required by Section 363(c) of the Bankruptcy Code.

39. ACA respectfully requests that the Court direct Debtor to provide an accounting to ACA of all collected Receivables since the Petition Date, Debtor's use of said collected Receivables since the Petition Date, and the deposit account information for the location of these Receivables.

## **RESERVATION OF RIGHTS**

Notwithstanding the filing of this Motion, ACA hereby expressly reserves all other claims and causes of action it may have against Debtor and Guarantors, including but not limited to, pre-petition secured claims, post-petition administrative expense claims, conversion claims, fraud claims, defalcation claims, and dischargeability claims.

**WHEREFORE,** ACA respectfully prays that the Court enter an order:

(a) granting the relief requested herein, including the terminating and annulment of the automatic stay imposed by Section 362(a) of the Bankruptcy Code to allow ACA to exercise its rights and remedies under the Funding Agreement, including, without limitation, the termination of Debtor's and its affiliates' servicing rights under the Funding Agreement and ACA's assumption of the servicing rights and collection of Debtor's outstanding receivables, and the non-judicial foreclosure of the other collateral securing ACA's claims against Debtor, namely the Contracts (i.e., RISC's), Collections, Related Security, Records, Receivable Files, and Servicer Files that comprise each Receivable;

(b) Prohibiting Debtor from using any of ACA's cash collateral and directing Debtor to provide an accounting of all Receivables collected by Debtor; and

31438756 v1

(c)    Granting ACA such other, further, and different relief that this Court deems just and proper.

Dated: April 2, 2018

Respectfully submitted,

BURR & FORMAN LLP

/s/ Erich N. Durlacher
Erich N. Durlacher
Georgia Bar No. 235563
Kelly E. Waits
Georgia Bar No. 142677
Suite 1100, 171 17th Street, N.W.
Atlanta, Georgia  30363
(404) 815-3000 [telephone]
(404) 817-3244 [facsimile]
edurlacher@burr.com
kwaits@burr.com

*Attorneys for American Credit Acceptance, LLC*

31438756 v1

**CERTIFICATE OF SERVICE**

      I hereby certify that this, the 2nd day of April, 2018, I electronically filed the foregoing *Emergency Motion (I) For Relief from the Automatic Stay to Terminate Debtor's And Its Affiliates' Servicing and Collection Activities Under the Funding Agreement and Exercise Available Rights and Remedies; And (II) To Prohibit Use Of Cash Collateral And For An Accounting* and *Notice of Hearing* with the Clerk of Court using the CM/ECF system which will automatically send an e-mail notification of such filing to the party or attorneys of record, and by directing the same be mailed through first-class, United States mail, postage prepaid, to the following recipients:

Spring Tree Lending, LLC
1755 The Exchange, Suite 215
Atlanta, Georgia 30339

***Debtor***

Leslie M. Pineyro, Esq.
Jones and Walden, LLC
21 Eighth Street, N.E.
Atlanta, Georgia 30309

***Attorney for Pacific Island Equity Corporation***

Alex Kaufman, Esq.
Kaufman & Forman P.C.
8215 Roswell Road, Building 800
Roswell, Georgia 30350

***Attorney for Debtor***

Lindsay P.S. Kolba, Esq.
Office of the U.S. Trustee Office
Room 362
75 Ted Turner Drive, SW
Atlanta, GA 30303

***U. S. Trustee***

/s/ Erich N. Durlacher
Erich N. Durlacher
Georgia Bar No. 235563

BURR & FORMAN LLP
Suite 1100, 171 Seventeenth Street, N.W.
Atlanta, Georgia 30363
(404) 815-3000 [telephone]
(404) 817-3244 [facsimile]
edurlacher@burr.com

13

31438756 v1